1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                           **DISTRICT OF NEVADA**
6

7   HENDERSON APARTMENT VENTURE, LLC,    )
                                         )
8                           Plaintiff,   )      Case No. 2:09-cv-01849-HDM-PAL
                                         )
9   vs.                                  )      **ORDER**
                                         )
10  ANDREW S. MILLER,                    )      (Mot Compel Prod Docs - Dkt. #30)
                                         )      (Mot Clarify - Dkt. #49)
11                         Defendants.    )
    _____  )
12

13          The court reviewed the Emergency Motion (Dkt. #30) and entered an Order (Dkt. #42)

14   establishing a briefing schedule, setting the matter for hearing August 24, 2010, and indicating that

15   pending a decision on the motion on its merits, the parties may, but were not required to,  file

16   dispositive motions by the deadline established by the court's Discovery Plan and Scheduling Order.

17          The court conducted a hearing August 24, 2010.  Brian Day appeared on behalf of the Plaintiff.

18   Kirk Lenhard, Anthony DiRaimondo, Natalie Larsen Anderson and Philip Overcash appeared on behalf

19   of the Defendant.  The court heard arguments of counsel and found that the Plaintiff's privileged

20   document log did not comply with the requirements of Rule 26(b)(5) and directed Plaintiff's counsel to

21   serve a rule-compliant privileged log on counsel for Defendant within ten days, and to produce non-

22   privileged documents and/or produce documents containing both privileged and non-privileged

23   information in redacted form on opposing counsel.  The hearing was continued until September 10,

24   2010, for further proceedings to follow up on the supplemental log, and because Defendant Andrew

25   Miller filed a Motion to Clarify and Expand the Court's August 24, 2010 Order (Dkt. #49) after the

26   initial motion.

27          At the hearing on September 10, 2010, Douglas Monson and Brian Day appeared on behalf of

28   the Plaintiff.  Kirk Lenhard appeared on behalf of the Defendant.  Counsel for Plaintiff served a

supplemental privileged document log as directed.  However, counsel for Defendant argued the privileged document log did not meet Defendant's burden of establishing that the withheld documents were privileged.  Counsel for the parties also clarified the extent of the dispute which was unintentionally understated at the August 24, 2010 hearing.  After hearing arguments of counsel, the court directed counsel for Defendant to submit a ten percent sample of documents identified on the privileged log to the court for *in camera* review.  Counsel for Defendants timely complied with the order to submit a sample of the documents for *in camera* review.[1]

## **BACKGROUND**

This is an action arising out of a Purchase and Sale Agreement ("PSA") dated June 29, 2007, and First Amendment to Purchase and Sale Agreement dated June 10, 2008, entered into between Plaintiff and Vested Housing Group, LLC ("Vested") related to the development of a residential apartment complex on a piece of land in Henderson, Nevada.  Defendant Miller is the sole member of Vested and a guarantor of selected provisions of the PSA.  Plaintiff has asserted claims for breach of contract, unjust enrichment and declaratory relief.

Defendant Miller's ("Miller") Motion to Compel (Dkt. #30) seeks an order compelling Plaintiff to produce e-mail correspondence withheld on the basis of attorney-client privilege.  It asks that the court find that certain communications withheld from production are not privileged and must be disclosed.  Specifically, Defendant seeks an order compelling disclosure of any correspondence or e-mail withheld from production where the subject matter of the communication was not "for the purpose of facilitating the rendition of professional legal services."  Defendant also seeks an order compelling disclosure of correspondence and e-mails exchanged between non-attorney corporate employees which merely forward privileged e-mail correspondence from an attorney.  Defendant agrees that privileged material may be redacted.  However, Defendant argues that he is entitled to discover correspondence

---

[1]Unfortunately, the court only recently discovered that an order had not been entered disposing of both motions.  Counsel are reminded that LR 7-6(b) permits counsel to submit and serve a letter to the court sixty days after any matter has been, or should have been, submitted to the court for decision if the court has not entered its written ruling.  The court appreciates counsel are often hesitant to send the court such a letter.  However, the undersigned always welcomes a friendly reminder that a matter remains undecided.

1    between non-attorney employees which merely discuss business issues that arise out of an attorney's

2    legal advice and "discuss legal issues, but do not put the prior advice of counsel in issue." Finally,

3    Defendant seeks an order compelling disclosure of correspondence between non-attorney corporate

4    employees which merely "cc counsel as indirect addressees."

5        Defendant Miller also seeks an order permitting him to supplement his motion for summary

6    judgment in the event the court compels production of the requests supportive of a motion for summary

7    judgment.

8        Plaintiff opposes the motion asserting Defendant Miller served written discovery on the eve of

9    the discovery cutoff. Plaintiff produced over 1,000 e-mails in response and over 5,000 pages of

10   documents. At issue in this motion is approximately 600 e-mails withheld from Henderson's files

11   which involve in-house counsel, outside attorneys and/or legal advice. Plaintiff believes that it has

12   appropriately withheld documents identified on its privileged document log, but offered to compromise

13   and produce additional materials. Counsel for Defendant Miller would not agree to the proposed

14   "compromise standard" offered by counsel for Henderson. Plaintiff contends that the parties' dispute

15   arises out of the June 29, 2007 PSA between Henderson and Vested Housing Group, LLC, which

16   includes a personal guarantee of Defendant Miller of certain payment obligations. At issue in this

17   litigation is the legal interpretation of certain contractual provisions in the agreement. Plaintiff argues

18   that the involvement of in-house counsel and outside attorneys for the Plaintiff can be separated into the

19   negotiation of documents between the parties before entering into the agreement on June 29, 2007, and

20   actions occurring after June 29, 2007.

21       Plaintiff Henderson agrees that e-mails from legal counsel and/or involving legal counsel's

22   advice are not privileged where the subject matter of the communication is not for the purpose of

23   facilitating the rendition of legal services. Henderson also agrees that e-mails which were merely

24   "cc'd" to an attorney which do not involve legal advice or the furtherance of the rendition of legal

25   services are not privileged. However, Henderson asks the court to rule that all e-mails generated after

26   August 2008 should be deemed "legal advice" rather than "business advice" because there is no

27   allegation by Defendant Miller that the parties were continuing in a business transaction after August

28   2008. Henderson also seeks a ruling that communications between non-attorneys are protected by the

attorney-client privilege if they: (1) consist of communication among company employees which reflect legal advice rendered by counsel to the company; (2) assist counsel for the purpose of providing legal advice; (3) provide information so that counsel can provide legal advice; and (4) "put[s] legal advice at issue."

Counsel for Henderson represents that it has produced all communications between non-attorneys which are not protected by the attorney-client privilege.  Henderson has also produced communications involving counsel which only concern business or financial advice.  However, Plaintiff maintains all communications after August 2008, should be covered by a "presumption of privilege" because they occurred after the parties began having disputes about the rights and obligations under their agreement.  The majority of the e-mails withheld as privileged occurred after the August-September 2008 breakdown in the parties' relationship under the agreement.  Relying on a district court decision in *Premiere Digital Access Inc. v. Central Telephone Company*, 360 F.Supp.2d, 1168 (D. Nev. 2005), counsel for Henderson argues that "the business versus legal distinction is not always clear and inevitably both kinds [sic] advice may be intertwined making the entire communication privilege [sic]." Opposition Dkt. #43 8:1-2.

Counsel for Plaintiff represents that the e-mails which have been withheld primarily involve in-house counsel Thomas Pospisil, Joelle Palmer and Dan Koehler, and are dated from the end of 2008 and 2009.  Plaintiff represents they address defaults of Miller and his related entities under the agreement "as well as to seek their legal advice and comments on any course of action, including the exercise of any rights and remedies under the Agreement." *Id*. 8:5-10.  Counsel for Plaintiff adds that "even in-house counsel advising about monetary issues would be extension of a damage model against Miller resulting from his default." *Id*. 8:9-11.  As there was no "business transaction" between the parties after September 2008, all of these e-mails are privileged.

Counsel for Henderson believes that the standard it proposes for withholding communications involving non-lawyers appropriately reflects the nature of the attorney-client privilege in the context of a corporation.  Because a corporation is an inanimate entity, legal advice provided to it needs to be shared with many individuals to ensure the company is adequately advised and can utilize the advice.  Communications between non-attorney employees of a company may be privileged if they reflect legal

advice rendered by counsel.  Counsel for Henderson agrees that documents which contain both privileged and non-privileged matters can and should be redacted.  However, Henderson disagrees with the suggestion made by counsel for Miller that the only information that may be redacted is that which "reiterates legal advice of counsel or places legal advice in issue."  Henderson argues that it should be permitted to withhold or redact information provided to counsel so that counsel could provide legal services, communications made in confidence for the primary purpose of obtaining legal advice, even if not directly communicated to or from counsel, and legal advice relayed to the company's board of directors.

Finally, Henderson opposes giving Miller an opportunity to supplement his motion for summary judgment to the extent the court determines that Henderson has appropriately withheld privileged documents.  To the extent the court requires Henderson to produce additional documents, Henderson asks that the court "require Miller to show a nexus between any supplement to his motion for summary judgment and the documents produced by order of the Court."

Miller replies that the court should grant his motion outright and/or conduct an in-camera review of the documents withheld on the basis of privilege because Henderson has not produced all responsive non-privileged documents.  Henderson did not serve its privileged log until August 6, 2010, after the dispositive motion deadline.  Miller disputes that communications occurring after any date certain are presumptively privileged arguing that the closing of the parties' buy-sell process occurred at the end of 2008.  Additionally, alternative proposals for the continuation of the project occurred well into 2009, and Henderson has produced e-mails dated after August 2008.  Miller asks the court for an order finding that "correspondence that is not to or from a lawyer is not privileged, unless it copies, by forwarding the original legal advice or otherwise, or relays or transmits the legal advice."

After the August 24, 2010 hearing, Defendant Miller filed a Motion to Clarify and Expand the Court's Oral Ruling (Dkt. #49).  The motion to clarify indicated there was a miscommunication between Miller's local counsel and Arizona counsel about the nature of what Exhibit "H" to Miller's Motion to Compel was intended to be.  The motion to compel erroneously indicated that Exhibit "H" were the e-mails that the court should compel Henderson to produce.  However, it was actually a "representative list".  Henderson's opposition to the motion to compel correctly points out that the

parties' dispute involves in excess of 600 e-mails and does not limit it to the 100 or so e-mails listed in Exhibit "H". Miller asks that the court "find that Henderson has waived its assertions of privilege as a sanction for its bad faith in failing to properly identify the complete nature of its assertions of privilege, and require Henderson to produce to Miller all 600+ e-mails it has improperly withheld. Alternatively, Miller requests that the court require Henderson to produce a fully-compliant Rule 26(b)(5) privileged log for all withheld documents.

Arizona counsel for Miller participated in the August 24, 2010 hearing telephonically, but did not recognize the miscommunication problem until receiving this court's August 25, 2010 order. Counsel promptly communicated with opposing counsel and requested that Henderson stipulate to prepare a privileged log for all 600+ e-mails in dispute, rather than the 100 or so described in Exhibit "H". However, opposing counsel declined. Counsel for Miller argues that Henderson was required to provide a rule-compliant privileged log for all documents withheld notwithstanding the miscommunication involved in the Motion to Compel. At the August 24, 2010 hearing, the court found that the privileged log Henderson submitted with its response to Miller's motion to compel was insufficient. Henderson had the legal obligation under Rule 26(b)(5) to timely produce a privileged log for all documents withheld on the basis of privilege. Thus, Henderson's refusal to produce a Rule 26(b)(5) compliant privileged log for the 600+ withheld documents should result in a finding Henderson has waived privilege. Miller relies on the Ninth Circuit decision in *Burlington Northern & Santa Fe Ry. Co. v. U.S. District Court for the District of Montana*, 408 F.3d 1142 (9th Cir. 2005) for the proposition that Henderson should be prevented from asserting privilege objections. If the court does not find that Henderson has waived the privilege with respect to all withheld documents, the court should order Henderson to produce a Rule 26(b)(5) compliant privileged log for all 600+ documents withheld. Finally, Miller reiterates the request that the court conduct an in-camera review of all withheld documents.

Henderson filed a supplement (Dkt. #50) attaching a supplemental privileged log for all documents referenced in Exhibit "H" in Miller's motion to compel. After the court heard oral argument at the hearing on September 10, 2010, the court directed counsel for Plaintiff to produce a ten percent
///

representative sample of the documents described in the supplemental privileged log for the court's review.  The documents were submitted on September 13, 2010 in compliance with the order.

Plaintiff filed a Response to Defendant Miller's Motion to Clarify (Dkt. #54) which asserts that prior to the August 24, 2010 hearing, counsel for Defendant did not have any objections to the sufficiency of Plaintiff's amended privileged log and subsequent follow-up responses.  Rather, counsel for Plaintiff understood that Defendant Miller's disagreement about this discovery dispute involved the applicable legal standard concerning the attorney-client privilege.  Plaintiff points out that Miller did not raise the issue of an inadequate or non-compliant privilege log and cited no authority in its initial motion to compel, or in its reply, or at the August 24, 2010 hearing.  Thus, Miller's argument that the privileged log is insufficient is "outrageous".  Plaintiff complied with the court's order that it produce a privileged log for the documents identified in Exhibit "H" to Miller's motion, and has provided the court a ten percent representative sample of the documents listed on Exhibit "H" for *in camera* review.  Counsel for Plaintiff disagrees that it should be required to supplement its privileged log for all 600 e-mails when counsel for Miller did not object to the adequacy of the admitted privileged log after the July [presumably 2010] production.  Counsel for Henderson reasonably believed that Exhibit "H" attached to Miller's motion to compel was the main focus of this motion to compel, and that it has satisfied its obligation to produce an adequate privileged log.  As such, Defendant Miller has an obligation to review the privileged log and identify any documents Defendant believes were inappropriately withheld.  Plaintiff points out, for example, that over 80 e-mails listed on the log are directly to or from representatives of Henderson and its outside counsel, and are identified as generally related to loan default issues, post foreclosure zoning issues, and the HAV HLD litigation forbearance and loan issues.

Plaintiff also vigorously disputes that it has waived an attorney-client privilege for the entire amended privileged log on Defendant's new theory that it does not comply with Rule 26(b)(5).  Miller did not raise this issue in its motion to compel or reply.  Thus, the court should not allow Miller to essentially circumvent the discovery rule and file a new motion to compel called a motion to clarify.  Since the amended privileged log was prepared, counsel for Miller has not claimed that any document listed on it was deficient in any way.  Counsel for Plaintiff argues that counsel for Miller's

representation to the court that an adequate privileged log was produce in July 2010, and then filing a motion September 2010, arguing it was not adequate is disingenuous.  As a result, counsel for Plaintiff requests sanctions under Rule 37(b) and (c).

Defendant Miller filed a Reply (Dkt. #55) asserting counsel for Plaintiff is attempting to exploit a miscommunication between Miller's local and Arizona counsel to withhold a wider scope of documents than permitted by the Rules of Civil Procedure.  Counsel for Miller argues that the current dispute began when Henderson failed to produce any privileged log at all, despite Miller's agreement to grant Henderson multiple extensions of time to serve discovery responses.  The discovery dispute arose after Henderson produced its initial privileged log, and Miller's counsel communicated what it believed were "gross inadequacies" in it to Henderson's counsel.  Counsel refers the court to Exhibit "A" to the motion to compel to support its argument.

On July 1, 2010, three-and-a-half months after responding to Miller's first request for production, Henderson served its amended privileged log.  At that point it became evident plaintiff was withholding non-privileged documents, an amended privileged log, and second amended privileged log were produced.  However, during the August 24, 2010 hearing, the court found the second amended privileged log failed to comply with the Federal Rules of Civil Procedure and allowed Henderson an opportunity to provide another privileged log.  Counsel for Miller's miscommunication to the court about the scope of the dispute was brought to the court's attention.  Additionally, counsel for Miller argues that the motion to compel and reply argued that communications among non-lawyers are not privileged, and therefore, at issue.

Counsel for Miller does not dispute that some of the 600+ e-mails listed on the amended privileged log are probably privileged.  However, Miller asks that the court require the Plaintiff to prove which ones are actually privileged and why.  Counsel for Miller also points out that during the August 2008 hearing, counsel for Plaintiff agreed with the court that it was not entitled to a "presumption" of privilege based on the date of a communication.  Nevertheless, it continues to maintain that the standard it proposes in opposition to the motion to compel is the correct one.

///

///

**DISCUSSION**

Fed.R.Evid. 501 governs the determination of whether the materials sought in Discovery is privileged. It provides:

> Except as otherwise required by the Constitution of the United States or as provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Plaintiff's complaint was initially filed in state court and asserts state claims against the Defendant. Defendant removed the case invoking the court's diversity jurisdiction. Defendant's motion to compel and related papers almost exclusively cite federal authority applying the attorney-client privilege to communications between in-house attorneys and corporate employees. The *Premiere Digital* case relied on by counsel for both parties, involved a district court decision construing Nevada Law on the attorney-client privilege.

Nevada Revised Statute ("NRS") 49.095 codifies the Nevada attorney-client privilege and provides:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:
>
> 1. Between himself or his representative and his lawyer or his lawyers representative;
>
> 2. Between his lawyer and the lawyer's representative;
>
> 3. Made for the purpose of facilitating the rendition of professional legal services to the client, by him or his lawyer to a lawyer representing another in a matter of common interest.

NRS 49.095. A communication is confidential if "it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." NRS 49.055. The Nevada Supreme Court has recognized that "difficulties arise in attempting to apply the attorney-client privilege in a corporate setting." *Wardleigh v. District Court*, 111 Nev. 345, 351, 891 P.2d 1180 (1995).

9

In *Wardleigh* the Nevada Supreme Court considered whether discussions of lawsuits at board meetings of a condominium homeowners association were covered by the attorney-client privilege. The court addressed whether such discussions were intended to be confidential or, in the alternative, in furtherance of the rendition of legal services. Attorneys representing the plaintiffs discussed the lawsuits at homeowners association meetings. The Nevada Supreme Court concluded that the presence of homeowners at these meetings who were not representative clients of the attorneys demonstrated that the meetings were not intended to be confidential. "The presence of these guests undermines the contention that the meetings constituted a forum where privileged, confidential communications were intended." *Id*. at 354. Additionally, the Nevada Supreme Court concluded that the presence of these guests was not in furtherance of the rendition of professional legal services "because their presence was merely incidental to the legal relationship that may have existed at the time." *Id.* It therefore concluded that the attorney-client privilege did not exist with respect to association proceedings and minutes pertaining to those meetings. Finally, the Nevada Supreme Court held that "no privilege exists with respect to any comments made by an attorney at meetings of the nature described above." *Id*.

NRS 49.075 defines who a representative of the client is for purposes of the attorney-client privilege. It provides:

> "Representative of a client" means a person having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client.

There are few Nevada Supreme Court decisions addressing the attorney-client relationship, or the scope of the attorney-client privilege. However, the Nevada Supreme Court has held that because the attorney-client privilege obstructs the search for truth, it should be narrowly construed. *Whitehead v. Comm'n on Jud. Discipline,* 110 Nev. 380, 415, 873 P.2d 946 (1994). In *Reno v. Reno Police Protective Association*, 118 Nev. 889, 898, 59 P.3d 1212, the Nevada Supreme Court held "that a document transmitted by e-mail is protected by the attorney-client privilege as long as the requirements of the privilege are met." The court also rejected a finding of the Employee-Management Relations Board finding that the document in dispute in that case was not confidential because the city of Reno had a policy that employees have no expectation of privacy in using city equipment, and the document was transmitted by e-mail on city equipment. The court concluded, without discussion, that the

10

memorandum was confidential and therefore, privileged despite the city's policy.  As such, it provides little guidance to this court.

*Cheyenne Constr. Inc. v. Hozz*, 102 Nev. 308, 720 P.2d 1220 (1986) involved a case by a mobile home park owner against a contractor for breach of contract for paving work at the park.  The plaintiff argued that the trial court erred in refusing to require the defendant's attorney to testify over an attorney-client privilege objection concerning whether the attorney advised the defendant not to repair damaged-paved areas.  Plaintiff contended that the defendant had waived the privilege by calling his attorney to the witness stand.  The Nevada Supreme Court agreed that a disclosure of privileged communications waived the remainder of the privileged consultation on the same subject.  102 Nev. at 312.  However, it also found that "acts or services performed by an attorney for his client in the course of employment and which are accessible to others or to the public do not fall within the privilege because no private communication is involved."  *Id*.  Applying these principles, the Nevada Supreme Court found that the attorney-client privilege had not been waived when the defendant's attorney testified regarding his dealings with the plaintiff concerning the construction, repair work, and payment involved in the disputed project.  *Id*.  Discussions with the plaintiff were neither private communications nor attorney-client privileged communications.  Thus, the Supreme Court found the trial court did not err in sustaining the defendant's attorney-client objection to testimony by the attorney concerning his advice to the defendant on the same topic.

In this case the court was unable to determine from Plaintiff's privileged document log whether the documents asserted to be privileged that were identified in Exhibit "H" to Defendant's motion to compel were actually privileged.  The court therefore directed counsel to serve an amended privileged log for the documents identified in Exhibit "H".  The supplemental privileged log identifies the names of three in-house counsel for the Plaintiff and the names and law firms of four outside counsel involved in the disputed communications.  The index accompanying the supplemental privileged log also identifies the name of twenty-eight separate individuals and/or groups of individuals as "HAV/Principal Internal Personnel".  One grouping of individuals identified is the FCCTDC or Fin Cfr Corp Treas Day Cman.  Also identified are the Gam Cret Team Resa and the Gam RealEstate Team.  The large number of individuals with whom these communications were exchanged, the lack of identification of who is a

11

1   member of the individual groups, coupled with Plaintiff's argument that they were entitled to a

2   presumption that documents dated on or after September 2008 are privileged, resulted in the court's

3   order that a ten percent representative sample be submitted for *in camera* review.

4          The court has now reviewed the ten documents submitted for *in camera* review and concludes

5   the Plaintiff has not met its burden of establishing the withheld documents are covered by the attorney-

6   client privilege.  The first document submitted to the court *in camera* is also the first document on the

7   supplemental privileged log.  It is described as a September 17, 2008 e-mail from RKL (Rob Klinkner)

8   to three other HAV individuals, courtesy copied to four other HAV individuals, one of whom, Thomas

9   Pospisil, is in-house counsel for the Plaintiff.  The subject line of the e-mail is the Henderson Lofts.

10  The body of the e-mail shows it is addressed to "Team Resa".  The description provided in the

11  supplemental privileged log for the document is "Email to internal team, including legal, to discuss

12  buy/sell strategy, HAV position on Miller and Wachovia loan default, and meeting with legal to discuss

13  next step with Miller."  Neither the description of the document, nor the court's review of the document

14  itself establishes that it is a confidential communication between client or clients and a lawyer or

15  lawyer's representative "for the purpose of facilitating the rendition of professional legal services to the

16  client."  In-house counsel is the last person listed on the courtesy copy line of the e-mail.  Nothing in

17  the e-mail suggests that legal advice is being solicited from counsel.  No question is posed to counsel in

18  the e-mail.  No statement is made that any of the statements are the result of legal advice being

19  communicated to a team of in-house personnel.  Rather, as the description itself suggests, the e-mail

20  seems to discuss Plaintiff's buy/sell strategy.  The last sentence refers to a meeting "to discuss our next

21  step with Andy with Tom and Linda."  Andy refers to the Defendant, Andrew Miller.  Tom and Linda

22  are not attorneys.

23         The second document identified in the supplemental privileged log and submitted to the court

24  for in-camera review is an e-mail thread consisting of the first document, and a response from Jeffrey

25  Frey dated September 17, 2008.  In-house counsel Tom Pospisil is courtesy copied as the last recipient

26  of the e-mail.  The supplemental privileged log describes it as a "Reply to e-mail #1 with thoughts and

27  specific message to [TPO] on approaching Wachovia."  The first sentence of the e-mail agrees with

28  Rob's [Klinkner's] comment about reaching out to Wachovia as a courtesy measure.  It also appears to

address in-house counsel, Mr. Pospisil suggesting they should meet before Frey has a conversation with Wachovia.  The latter half of the sentence identifies the more specific subject matter on which Mr. Frey apparently wants to consult in-house counsel.  The court cannot discern how the first sentence of the e-mail is privileged.  The second sentence of the e-mail that discusses the subject matter he wishes to discuss with in-house counsel arguably is.

At the August 24, 2010 hearing, the court categorically rejected Plaintiff's suggestion that it was entitled to a presumption of privilege for documents after a certain date.  Counsel for Plaintiff agreed that no Nevada, or for that matter, federal case has held that a court may presume a document is privileged based on its date.  When initially reviewing the parties' moving and responsive papers, the court concluded that counsel were expressing similar concepts using different language and were not actually far apart in their respective positions concerning the scope of the attorney-client privilege in the corporate context.  However, after reviewing a representative sample of the withheld documents, it is clear this is not accurate.  Counsel for Plaintiff has proposed a test for determining whether withheld documents are privileged that is not supported by any Nevada case, or any federal case cited in the parties' moving and responsive papers.  Specifically, counsel for Plaintiff asks the court to hold that communications between non-attorneys are protected by the attorney-client privilege if they: (1) consist of communications among company employees which reflect legal advice rendered by counsel to the company; (2) assist counsel for the purpose of providing legal advice; (3) provide information so that counsel can provide legal advice; and (4) put legal advice at issue.  Significantly, these four factors do not require a showing, required by NRS 49.095, that any of these communications were *confidential.*  Moreover, factor 4, communications that put legal advice at issue, is so vague it is meaningless.

The court recognizes that there are special problems arising in applying the attorney-client privilege in a corporate context.  Corporations can seek and receive legal advice and communicate with counsel only through individuals empowered to act on their behalf.  Corporate counsel clearly qualifies as an attorney for purposes of the attorney-client privilege.  However, corporate counsel can also act in dual roles.  Communications by corporate counsel providing business advice are not covered by the privilege.  However, as the *Premiere Digital* recognized, when "the primary purpose of the communication is the discern the legal ramifications of a potential course of action, that communication

1    is for a 'legal' purpose."  To be covered by the attorney-client privilege, communications between and

2    among corporate employees and between and among corporate counsel must be treated as confidential

3    *i.e.* "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance

4    of the rendition of professional legal services to the client or those reasonably necessary for the

5    transmission of the communication."  NRS 49.055.  Communications made between in-house counsel

6    in his or her capacity as such and employees in the scope of their employment, must be made with

7    knowledge that they are speaking to in-house counsel for the purpose of securing legal advice.  If so,

8    they are protected.  Relying on the United States Supreme Court decision in *Upjohn Co. v. United*

9    *States*, 449 U.S. 383, 394 (1981), the *Premiere Digital* decision held that "within the framework of

10   these guidelines, district courts are to determine the existence of the privilege on a case-by-case basis."

11          The court reluctantly concludes that an *in camera* review of all 127 documents listed on

12   Plaintiff's supplemental privileged document log should be conducted.

13          Having reviewed and considered the moving and responsive papers,

14          **IT IS ORDERED** that:

15          1.    Defendant's Emergency Motion to Compel (Dkt. #30) is **GRANTED** to the extent the

16                court will require the Plaintiff to submit all 127 documents listed on Defendant's

17                supplemental privileged document log dated September 3, 2010 to the court for *in*

18                *camera* review.

19          2.    Plaintiff shall have fourteen days from entry of this order in which to submit the

20                documents for *in camera* review.

21          3.    Defendant's Motion to Clarify (Dkt. #49) is **GRANTED** to the extent the court clarifies

22                it did not intend to require the Plaintiff to prepare a supplemental privileged log for all

23                600+ documents withheld from production, which were not identified by Defendant in

24                Exhibit "H" to its initial motion to compel.

25   Dated this 31st day of March, 2011.

27                                            _____
                                             Peggy A. Leen
28                                           United States Magistrate Judge

                                             14