## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

HENDERSON APARTMENT VENTURE, LLC,

                Plaintiff,

vs.

ANDREW S. MILLER,

                Defendant.

Case No. 2:09-cv-01849-HDM-PAL

**ORDER**

(Mot Compel Prod Docs - Dkt. #30)

     This matter is before the court on Defendant's Emergency Motion to Compel (Dkt. #30). On August 24, and September 10, 2010, the court held hearings on the Motion to Compel, and initially required the Plaintiff to serve an amended privileged log for the documents identified in Exhibit "H" to Defendants motion to compel. The court was unable to determine from Plaintiff's privileged document log whether the documents asserted to be privileged that were identified in Exhibit "H" were actually privileged. The court also required counsel for Plaintiff to submit a representative sample of ten percent of the withheld documents for *in camera* review. After conducting an *in camera* review, the court reluctantly compelled the Plaintiff to submit all 127 documents listed on Defendant's supplemental privileged document log to the court for *in camera* review. After a considerable and regrettably long delay, the court has now concluded an *in camera* review of all 127 documents listed on Plaintiff's supplemental privileged document log which were submitted to the court *in camera* on April 14, 2011.

## **BACKGROUND**

     This is an action arising out of a Purchase and Sale Agreement ("PSA") dated June 29, 2007, and First Amendment to Purchase and Sale Agreement dated June 10, 2008, entered into between Plaintiff and Vested Housing Group, LLC ("Vested") related to the development of a residential


apartment complex on a piece of land in Henderson, Nevada. Defendant Miller is the sole member of Vested and a guarantor of selected provisions of the PSA. Plaintiff has asserted claims for breach of contract, unjust enrichment and declaratory relief.

The Defendant initially moved to compel Plaintiff to produce all email correspondence withheld on the basis of attorney-client privilege. Defendant argued that the privileged document log was deficient and that it appeared the Plaintiff was withholding non-privileged communications between non-attorney employees which merely discussed business issues arising out of an attorney's legal advice and which may discuss legal issues, but not put the prior advice of counsel an issue. Defendant opposed the motion indicating that all non-privileged communications between non-attorneys had been produced. Plaintiff requested that the court apply a "presumption of privilege" for all communications dated after August 2008, because they occurred after the parties began having disputes about the rights and obligations under their agreement. The majority of the emails withheld as privileged occurred after the August - September 2008, breakdown of the parties' relationship under the agreement. The court's prior Order (Dkt. #61) more fully discusses the parties' arguments in support of their respective positions. The court rejected Plaintiff's claim that a presumption of privilege exists for documents generated after a certain date as unsupported by any state or federal authority. Additionally, the argument flies in the face of established law that the party asserting privilege has the burden of establishing every element of the privilege, including non-waiver.

For the reasons set forth below, the court will grant in part and deny in part the Defendant's motion to compel.

**DISCUSSION**

Fed.R.Evid. 501 governs the determination of whether the material sought in discovery is privileged. It provides:

> Except as otherwise required by the Constitution of the United States or as provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person,

///

> government, State, or political subdivision thereof shall be determined in accordance with State law.

*Id.*

Plaintiff's complaint was initially filed in state court and asserts state claims against the Defendant. Defendant removed the case invoking the court's diversity jurisdiction. Defendant's motion to compel and related papers almost exclusively cite federal authority applying the attorney-client privilege to communications between in-house attorneys and corporate employees. Both parties rely on a district court decision in *Premiere Digital Access, Inc. v. Central Telephone Company,* 360 F.Supp 2d 1168 (D. Nev. 2005) to support their respective positions. That case involved a decision construing Nevada law on the attorney-client privilege in the context of a corporation.

Nevada Revised Statute ("NRS") 49.095 codifies the Nevada attorney-client privilege and provides:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:
>
> 1. Between himself or his representative and his lawyer or his lawyers representative;
>
> 2. Between his lawyer and the lawyer's representative;
>
> 3. Made for the purpose of facilitating the rendition of professional legal services to the client, by him or his lawyer to a lawyer representing another in a matter of common interest.

NRS 49.095. A communication is confidential if "it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." NRS 49.055. The Nevada Supreme Court has recognized that "difficulties arise in attempting to apply the attorney-client privilege in a corporate setting." *Wardleigh v. District Court*, 891 P.2d 1180 (1995).

In *Wardleigh,* the Nevada Supreme Court considered whether discussions of lawsuits at board meetings of a condominium homeowners association were covered by the attorney-client privilege. The court addressed whether such discussions were intended to be confidential or, in the alternative, in furtherance of the rendition of legal services. Attorneys representing the plaintiffs discussed the lawsuits at homeowners association meetings. The Nevada Supreme Court concluded that the

1  presence of homeowners at these meetings who were not representative clients of the attorneys
2  demonstrated that the meetings were not intended to be confidential. "The presence of these guests
3  undermines the contention that the meetings constituted a forum where privileged, confidential
4  communications were intended." *Id*. at 1185. Additionally, the Nevada Supreme Court concluded that
5  the presence of these guests was not in furtherance of the rendition of professional legal services
6  "because their presence was merely incidental to the legal relationship that may have existed at the
7  time." *Id.* It therefore concluded that the attorney-client privilege did not exist with respect to
8  association proceedings and minutes pertaining to those meetings. Finally, the Nevada Supreme
9  Court held that "no privilege exists with respect to any comments made by an attorney at meetings of
10 the nature described above." *Id*.
11        NRS 49.075 defines who a representative of the client is for purposes of the attorney-client
12 privilege. It provides:
13            "Representative of a client" means a person having authority
              to obtain professional legal services, or to act on advice
14            rendered pursuant thereto, on behalf of the client.
15 *Id.*
16       There are few Nevada Supreme Court decisions addressing the attorney-client relationship, or
17 the scope of the attorney-client privilege. However, the Nevada Supreme Court has held that because
18 the attorney-client privilege obstructs the search for truth, it should be narrowly construed. *Whitehead*
19 *v. Comm'n on Jud. Discipline,* 873 P.2d 946 (Nev. 1994). In *Reno v. Reno Police Protective*
20 *Association*, 59 P.3d 1212 (Nev. 2002), the Nevada Supreme Court held "that a document transmitted
21 by e-ail is protected by the attorney-client privilege as long as the requirements of the privilege are
22 met." The court also rejected a finding of the Employee-Management Relations Board finding that the
23 document in dispute in that case was not confidential because the city of Reno had a policy that
24 employees have no expectation of privacy in using city equipment, and the document was transmitted
25 by email on city equipment. The court concluded, without discussion, that the memorandum was
26 confidential and therefore, privileged despite the city's policy. As such, it provides little guidance to
27 this court.
28 / / /

*Cheyenne Constr. Inc. v. Hozz*, 720 P.2d 1224 (1986), involved a case by a mobile home park owner against a contractor for breach of contract for paving work at the park. Cheyenne Construction argued that the trial court erred in refusing to require the attorney for Hozz to testify over an attorney-client privilege objection concerning whether the attorney advised the defendant not to repair damaged-paved areas. Cheyenne Construction contended that Hozz had waived the privilege by calling his attorney to the witness stand. The Nevada Supreme Court agreed that a disclosure of privileged communications waived the remainder of the privileged consultation on the same subject. 720 P.2d at 1226. It reasoned that "acts or services performed by an attorney for his client in the course of employment and which are accessible to others or to the public do not fall within the privilege because no private communication is involved." *Id*. These discussions between the attorney for Hozz and Cheyenne Construction were neither private communications nor attorney-client privileged communications. However, the Nevada Supreme Court found held that Hozz had not waived the attorney-client privilege concerning the advice his attorney gave him when called the attorney to testify regarding his dealings with Cheyenne Construction concerning the construction, repair work, and payment involved in the disputed project. *Id*. Thus, the Supreme Court found the trial court did not err in sustaining Hozz's attorney-client objection to testimony by the attorney concerning his advice to Hozz on the same topic.

      The court recognizes that there are special problems arising in applying the attorney-client privilege in a corporate context. Corporations can seek and receive legal advice and communicate with counsel only through individuals empowered to act on their behalf. Corporate counsel clearly qualifies as an attorney for purposes of the attorney-client privilege. However, corporate counsel can also act in dual roles. Communications by corporate counsel providing business advice are not covered by the privilege. However, as the *Premiere Digital* court found that when "the primary purpose of the communication is to discern the legal ramifications of a potential course of action, that communication is for a 'legal' purpose." 360 F.Supp 2d at 1174. To be covered by the attorney-client privilege, communications between and among corporate employees and between and among corporate counsel must be treated as confidential *i.e.* "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to

the client or those reasonably necessary for the transmission of the communication." NRS 49.055. Communications made between in-house counsel in his or her capacity as such and employees in the scope of their employment, must be made with knowledge that they are speaking to in-house counsel for the purpose of securing legal advice. If so, they are protected. Relying on the United States Supreme Court decision in *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981), the *Premiere Digital* decision held that "within the framework of these guidelines, district courts are to determine the existence of the privilege on a case-by-case basis."

Having reviewed the documents submitted to the court *in camera* with Plaintiff's supplemental privilege log, the court finds that Plaintiff has not met its burden of establishing that a substantial number of the documents claimed to be privileged are actually privileged. The court's initial Order (Dkt. #61) provided a detailed explanation for the court's determination of the first two documents submitted to the court *in camera* in the earlier submission were not privileged. Time and resources do not permit the court to provide a detailed explanation for each of the documents the court has determined are not privileged. However, the court will provide a few examples illustrative of the court's reasoning.

Document No. 11 on the Plaintiff's supplemental privileged log is described as a January 13, 2009, email, time-stamped 1:50 p.m., "to internal team, including legal, on Miller's buy-out offer and thoughts and specific request to [TPO] on legal implications and foreclosure". It is an email from Rob Klinkner to Darren Kleis and Doug Garrett. In-house counsel, Thomas Pospisil received a courtesy copy. The original email which generated the responsive email by Klinkner is dated January 12, 2009, from Klinkner to Pospisil which forwards a message on the Henderson lofts project sent to Pospisil from Brian Jordan which was courtesy copied to Defendant's principal, Andy Miller. Brian Jordan is not listed on Plaintiff's supplemental privilege log as one of HAV's principal internal personnel. He is not listed on the log at all. In the memo withheld has privileged, Klinkner attaches an offer received from Vested Housing to buy RESA's loan for $7.7M. He also provides his initial reaction to the offer and states "the deal presented appears to be an option." The email does contain a line addressed to "Tom" suggesting he could "chime in here" but comments that the offer seems to him to be a "deed in lieu of foreclosure offer. He makes other comments and indicates his preference for how to proceed.

1  Pospisil's legal opinion in response to Klinkner's comment "Tom-you can chime in here" would most
2  certainly be privileged if not otherwise waived by disclosure.  However, Klinkner's own opinions and
3  conclusions, are not.
4        Document No. 23 on the Plaintiff's supplemental privileged log is described as a March 24,
5  2009, email, time-stamped 2:20 p.m.  The email is from Klinkner to a number of HAV internal
6  personnel and is "cc'd to Pospisil."  In the email, Klinkner advises Berg and Kleis that TCR responded
7  to an email sent to Andy Miller.  Klinkner states what he characterizes is the good news and the bad
8  news from the TCR offer, and gives his "take" on the status of the parties' discussions.  There is a
9  single line in the fourth paragraph of the email directed to Pospisil which asks for legal advice.  The
10 court concludes that the email is non-privileged, and should be produced, redacted of the sentence
11 addressed to Pospisil in paragraph 4 of the email.  The rest of the email is simply a business discussion
12 about the pros and cons of the status of the discussions concerning TCR's response to ongoing
13 discussions about the project involved in this case.
14       Document No. 36 is a May 22, 2008, email, time-stamped 3:15 p.m., from Linda Woofter to
15 Jeffrey Frey and Kara Underwood .  It is described in the log as an "email regarding Principal legal
16 enforceability opinion in connection with Wachovia loan closing", with the legal opinion attached.
17 The attached legal opinion is from counsel for Principal Life Insurance to Wachovia Bank in
18 connection with the negotiation and closing of the amendment to the loan involved in this case, i.e., the
19 $13.2 million loan by Wachovia to Henderson Lofts Devco LLC as borrower.  Counsel for Principal
20 reviewed and examined the first amendment to the loan purchase agreement and other documents, and
21 provides opinions to a non-party, non-client lender, e.g., that the agreement has been duly authorized,
22 executed and delivered and constitutes valid and legally binding obligations of Principal.  It is not a
23 confidential attorney-client communication made for the purpose of facilitating or rendering legal
24 advice.  It is legal advice intentionally provided to a non-party lender,  to effectuate the business
25 transaction in dispute in this case.
26       Having reviewed the documents *in camera*, the court has found that approximately two-thirds
27 of the documents withheld as privileged were appropriately withheld and designated as privileged.
28 However, with respect to the documents identified in paragraph 1 of the order below, the court finds

that they are not confidential communications between a client and a lawyer, or lawyers representative for the purpose of facilitating the rendition of professional legal services to the client.  These communications do not pose questions to counsel, except for the portions the court will order redacted redacted.  The documents do not contain any statement that they were generated to receive legal advice, or respond to legal advice being communicated.  The court has upheld an assertion of privilege where data and information was compiled at the request of counsel.  However, the communications the court deems not privileged consists largely of internal discussions and observations about the viability and advisability of different courses of actions not related to the request for, or receipt of confidential attorney-client communications or legal advise intended to be kept confidential.  There is no indication from reading these documents that the primary purpose was to discern the legal ramifications of a potential course of action. For these reasons,

**IT IS ORDERED** that Defendant's Emergency Motion to Compel (Dkt. #30) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendant's Motion is GRANTED to the extent that the court finds the following emails are deemed not privileged and shall be produced by Plaintiff forthwith:
   (a) Email at Tab 1 of Plaintiff's supplemental privilege log;
   (b) Email at Tab 3 of Plaintiff's supplemental privilege log;
   (c) Email at Tab 4 of Plaintiff's supplemental privilege log;
   (d) Emails at Tab 7-8 of Plaintiff's supplemental privilege log;
   (e) Emails at Tabs 11-12 of Plaintiff's supplemental privilege log;
   (f) Emails at Tabs 35-37 of Plaintiff's supplemental privilege log;
   (g) Emails at Tabs 39-40 of Plaintiff's supplemental privilege log;
   (h) Emails at Tabs 45-46 of Plaintiff's supplemental privilege log;
   (i) Email at Tab 52 of Plaintiff's supplemental privilege log;
   (j) Emails at Tabs 54-55 of Plaintiff's supplemental privilege log;
   (k) Emails at Tabs 57-58 of Plaintiff's supplemental privilege log;
   (l) Emails at Tabs 60-61 of Plaintiff's supplemental privilege log;
   (m) Emails at Tabs 65-67 of Plaintiff's supplemental privilege log;

1         (n)      Emails at Tabs 69-70 of Plaintiff's supplemental privilege log;

2         (o)      Emails at Tabs 74-76 of Plaintiff's supplemental privilege log;

3         (p)      Emails at Tabs 80-81 of Plaintiff's supplemental privilege log;

4         (q)      Emails at Tabs 83-88 of Plaintiff's supplemental privilege log;

5         (r)      Email at Tab 93 of Plaintiff's supplemental privilege log;

6         (s)      Emails at Tabs 95-97 of Plaintiff's supplemental privilege log;

7         (t)      Emails at Tabs 99-104 of Plaintiff's supplemental privilege log; and

8         (u)      Emails at Tabs 123-124 of Plaintiff's supplemental privilege log.

9     2.    Defendant's Motion is DENIED to the extent that the court finds the following

10         documents are appropriately designated as privileged:

11         (a)      Email at Tab 5 of Plaintiff's supplemental privilege log;

12         (b)      Emails at Tabs 9-10 of Plaintiff's supplemental privilege log;

13         (c)      Emails at Tabs 13-22 of Plaintiff's supplemental privilege log;

14         (d)      Email at Tab 24 of Plaintiff's supplemental privilege log;

15         (e)      Emails at Tabs 26-34 of Plaintiff's supplemental privilege log;

16         (f)      Emails at Tabs 42-44 of Plaintiff's supplemental privilege log;

17         (g)      Emails at Tabs 48-51 of Plaintiff's supplemental privilege log;

18         (h)      Emails at Tabs 62-63 of Plaintiff's supplemental privilege log;

19         (i)      Emails at Tabs 72-73 of Plaintiff's supplemental privilege log;

20         (j)      Emails at Tabs 78-79 of Plaintiff's supplemental privilege log;

21         (k)      Email at Tab 82 of Plaintiff's supplemental privilege log;

22         (l)      Emails at Tabs 90-92 of Plaintiff's supplemental privilege log;

23         (m)      Email at Tab 98 of Plaintiff's supplemental privilege log;

24         (n)      Emails at Tabs 105-122 of Plaintiff's supplemental privilege log; and

25         (o)      Emails at Tabs 125-126 of Plaintiff's supplemental privilege log.

26     3.    Defendant's Motion is GRANTED IN PART AND DENIED IN PART with respect to

27         the following documents, which Plaintiff shall produce forthwith in redacted form:

28 ///

(a) Email at Tab 2 of Plaintiff's supplemental privilege log, which shall be produced with the second sentence redacted;

(b) Email at Tab 6 of Plaintiff's supplemental privilege log, which shall be produced with the first paragraph redacted;

(c) Email at Tab 23 of Plaintiff's supplemental privilege log which shall be produced redacted of the last sentence of the fourth paragraph;

(d) Email at Tab 25 of Plaintiff's supplemental privilege log, which shall be produced with the fourth paragraph to JPA redacted and the fifth paragraph to JPA and TPO redacted;

(e) Email at Tab 38 of Plaintiff's supplemental privilege log, which shall be produced with the second sentence redacted;

(f) Email at Tab 41 of Plaintiff's supplemental privilege log, which shall be produced with the first paragraph redacted;

(g) Email at Tab 47 of Plaintiff's supplemental privilege log, which shall be produced with the fourth paragraph to JPA redacted and the fifth paragraph to JPA and TPO redacted;

(h) Email at Tab 53 of Plaintiff's supplemental privilege log, which shall be produced with the second sentence redacted;

(i) Email at Tab 56 of Plaintiff's supplemental privilege log, which shall be produced with the first paragraph redacted;

(j) Email at Tab 59 of Plaintiff's supplemental privilege log, which shall be produced with paragraph 2a redacted;

(k) Email at Tab 64 of Plaintiff's supplemental privilege log, which shall be produced with the first paragraph redacted;

(l) Email at Tab 68 of Plaintiff's supplemental privilege log, which shall be produced with the second paragraph of the 10/2/08 email, which is time-stamped at 10:13 a.m., redacted; and

///

        (m)    Email at Tab 94 of Plaintiff's supplemental privilege log, which shall be produced with the second sentence redacted.

4.    The following documents were not provided to the court *in camera* with Plaintiff's supplemental privilege log, and the court makes no finding regarding whether or not they are privileged:

        (a)    Email listed at Tab 77 of Plaintiff's supplemental privilege log;

        (b)    Email listed at Tab 89 of Plaintiff's supplemental privilege log; and

        (c)    Email listed at Tab 127 of Plaintiff's supplemental privilege log.

Dated this 24th day of January, 2012.

Peggy A. Leen
United States Magistrate Judge